511 So.2d 690 (1987)
Eleanor WOOD, Appellant,
v.
HARRY HARMON INSULATION and Hartford Accident & Indemnity Company, Appellees.
No. BO-385.
District Court of Appeal of Florida, First District.
August 12, 1987.
Rehearing Denied September 21, 1987.
T. Edward McClamma, of Brown, Terrell, Hogan & Ellis, P.A., Jacksonville, for appellant.
Terry D. Bork and E. Robert Williams, of Boyd, Jenerette, Staas, Joos, Williams, Felton & Wirtz, P.A., Jacksonville, for appellees.
MILLS, Judge.
Two issues are presented in this workers' compensation appeal. The first concerns the "last injurious exposure" requirement *691 of section 440.151(5), Florida Statutes.[1] The second concerns the constitutionality of the 350-week provision of section 440.151(1)(a), Florida Statutes.[2]
Thomas Wood (the employee) worked in the insulation business from 1949 through 1973. During that time, he worked for approximately 43 different employers. He was exposed to asbestos throughout his career. He worked for Harry Harmon Insulation from 1971 through 1973, and was last exposed to asbestos while working there in 1973. In 1984, he was diagnosed as having malignant pleural mesothelioma, a disease caused by inhalation of asbestos fibers.
After this diagnosis, the employee filed a claim for workers' compensation benefits against Harry Harmon Insulation pursuant to the occupational disease statute, section 440.151, Florida Statutes. He sought temporary total disability benefits from the date of diagnosis, medical benefits, mileage, interest, and attorneys' fees. He died from the disease prior to a hearing on the merits of the claim. His wife, Eleanor Wood, became the claimant. She sought the benefits originally requested by her husband plus death benefits.
The claimant contended her husband's last injurious exposure to asbestos occurred in 1973, while he worked for Harry Harmon Insulation. The employer/carrier (e/c) admitted the employee was last exposed to asbestos while working for Harry Harmon Insulation in 1973, but contended the exposure was not "injurious" within the meaning of section 440.151(5), Florida Statutes. The e/c also contended it was not liable for benefits because the employee did not actually contract the disease while working for the employer in 1973. Moreover, the e/c asserted that death benefits were barred by the 350-week limitation in section 440.151(1)(a), Florida Statutes. The claimant countered this last defense by arguing that the 350-week limitation was unconstitutional.
At the hearing on the claim, the claimant submitted the testimony of an expert, Dr. O'Donnell. The e/c submitted the testimony of another expert, Dr. Millstone. Both experts testified that the statistical information pertaining to malignant pleural mesothelioma indicated the disease has a latency period of 20 to 45 years. That is, it generally takes 20 to 45 years following exposure to asbestos for the disease to *692 develop. Dr. O'Donnell, however, stated that there were many cases where the only exposure to asbestos was for a year or two only ten years before diagnosis. He initially testified that the 1973 exposure was a contributing cause and had a significant effect on the employee's disease. He testified later that the most likely cause of the disease, based on reasonable medical probability, was exposure to asbestos before and during 1964, and that the 1973 exposure merely could have caused the disease.
Dr. Millstone testified that in his research he had discovered only one case where the latency period was less than 20 years. In that case, the latency period was 15 to 16 years. He opined that the 1973 exposure could not have caused the employee's mesothelioma because the disease was diagnosed only 11 years after that exposure. But he also testified that any time one inhales asbestos it is injurious, and that the 1973 exposure could have caused the disease "10 years down the road." Both experts maintained that they could not pinpoint the exact exposure that caused the disease.
The deputy commissioner denied the claim. He found the employee's exposure to asbestos between 1949 and 1964 caused the employee to contract mesothelioma. He further found that the employee's last injurious exposure to asbestos was in 1964, when the employee worked for a different employer. He concluded that exposure to asbestos in 1973 was not causally related to the employee's disease, and, therefore, the 1973 exposure was not "injurious."
Although the deputy denied the claim on the ground that Harry Harmon Insulation was not the employer at the time of the employee's last injurious exposure, he also found that death benefits were barred by the 350-week limitation period of section 440.151(1)(a), Florida Statutes.
A claimant must prove four things to recover under an occupational disease theory:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;
(2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be substantially higher in the occupation than in usual occupations;
(4) if the disease is an ordinary disease of life, the incidence of such a disease must be substantially higher in the particular occupation than in the general public.
Hamilton v. Stamas Yachts, 496 So.2d 230 (Fla. 1st DCA 1986); Smith v. Crane Cams, Inc., 418 So.2d 1266 (Fla. 1st DCA 1982); King Motor Co. v. Pollack, 409 So.2d 160 (Fla. 1st DCA 1982); Lake v. Irwin Yacht & Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981); Broward Industrial Plating, Inc. v. Weiby, 394 So.2d 1117 (Fla. 1st DCA 1981).
In the case at bar, the controversy centers around the second requirement. This requirement, that the disease be actually contracted during employment in the particular occupation, does not mean the disease must be contracted while the employee is working for the same employer under whom the last injurious exposure occurred. Such an interpretation would be contrary to the pronouncements of our Supreme Court in Mundy v. McLean, 72 So.2d 275 (Fla. 1954), and Conner v. Riner Plastering Co., 131 So.2d 465 (Fla. 1961). In Conner, the court observed:
The obvious intent of [section 440.151(5)] was to fix liability on employers in such a way as to render it unnecessary in cases of occupational diseases to make the nearly impossible determination as to which employment or employments contributed in what measure to the disease. This purpose is effected by attaching liability to the employer in whose employment the claimant was last injuriously exposed to the hazards of the occupational disease.
131 So.2d at 477. The court went on to quote from Mundy:

*693 It is the last injurious exposure upon which this provision hinges, and not the initial development or occurrence of the disease.
131 So.2d at 477 (quoting Mundy, 72 So.2d at 277).
Thus, we reject the notion that a claimant must prove the last injurious exposure to the hazard actually caused the disease. To meet the second requirement of the four-pronged test, a claimant need only prove that the employer against whom benefits are claimed was the employer at the time of the last injurious exposure. That the employee may have actually contracted the disease while working for a prior employer is not determinative.[3]
Of course, to simply state that the employer at the time of last injurious exposure is liable for workers' compensation benefits stemming from an occupational disease begs the question of what constitutes injurious exposure. The e/c argue in effect that, to be injurious, the exposure must aggravate or cause the disease. Such a rule, however, would be contrary to the purpose of the last injurious exposure requirement as stated in Conner. We believe the better view is that so long as the exposure in question, independent of other causes, could over extended time lead to development of the disease, then that exposure is "injurious" within the meaning of section 440.151(5), Florida Statutes.[4] Because the evidence in the instant case unquestionably showed the nature of the 1973 exposure to be such that, independent of other causes, it could in time have led to the development of malignant pleural mesothelioma, the deputy erred in denying the claim based on the conclusion that the last injurious exposure did not occur in 1973.
We now turn to the question of the constitutionality of the time limitation contained in section 440.151(1)(a), Florida Statutes. The claimant argues that the provision denies her access to the courts contrary to article I, section 21, Florida Constitution. For purposes of this challenge, however, we cannot discern any meaningful distinction between the operation of the statute in question and the operation of section 440.16(1), Florida Statutes.
Section 440.151(1)(a) requires, for death benefits to be payable, that death result from an occupational disease within 350 weeks of the last exposure. See Keene Corp. v. Bahl, 476 So.2d 789 (Fla. 1st DCA 1985). Likewise, section 440.16(1) requires in industrial accident cases, for death benefits to be payable, that death result within one year after the industrial accident or follow continuous disability and result within five years after the industrial accident. In McCotter Motors, Inc. v. Newton, 453 So.2d 117 (Fla. 1st DCA 1984), this Court upheld the constitutionality of the latter statute in the face of an argument that its operation denied a widow equal protection, access to courts, and thereby due process of law. The Florida Supreme Court agreed. Newton v. McCotter Motors, Inc., 475 So.2d 230 (Fla. 1985), cert. denied, 475 U.S. 1021, 106 S.Ct. 1210, 89 L.Ed.2d 323 (1986). For the reasons stated in McCotter Motors, we conclude section 440.151(1)(a) does not unconstitutionally deny the claimant access to the courts. The deputy therefore did not err in finding the claim for death benefits barred by the statute.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings not inconsistent with this opinion.
WENTWORTH and BARFIELD, JJ., concur.
NOTES
[1] Section 440.151(5), Florida Statutes (1973), provides:

Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier; and the notice of injury and claim for compensation, as hereinafter required, shall be given and made to such employer; provided, however, that in case of disability from any dust disease the only employer and insurance carrier liable shall be the last employer in whose employment the employee was last injuriously exposed to the hazards of the disease for a period of at least sixty days.
[2] Section 440.151(1)(a), Florida Statutes (1973), provides:

Where the employer and employee are subject to the provisions of the workmen's compensation law, the disablement or death of an employee resulting from an occupational disease as hereinafter defined shall be treated as the happening of an injury by accident, notwithstanding any other provisions of this chapter, and the employee or, in case of death, his dependents shall be entitled to compensation as provided by this chapter, except as hereinafter otherwise provided; and the practice and procedure prescribed by this chapter shall apply to all proceedings under this section, except as hereinafter otherwise provided. Provided, however, that in no case shall an employer be liable for compensation under the provisions of this section unless such disease has resulted from the nature of the employment in which the employee was engaged under such employer and was actually contracted while so engaged, meaning by "nature of the employment" that to the occupation in which the employee was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations and is in excess of the hazard of such disease in such employment, or, in case of death, unless death follows continuous disability from such disease commencing within the period above limited, for which compensation has been paid or awarded or timely claim made as provided in this section, and results within three hundred fifty weeks after such last exposure.
[3] To the extent language in Cast Crete Corp. v. Duncan, 383 So.2d 245 (Fla. 1st DCA 1980) contradicts this holding, we regard that language as not essential to the decision in that case and therefore dicta. See State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973).
[4] For a comprehensive collection of cases from many jurisdictions, and a discussion of differing views on this subject, see Annot. 34 A.L.R. 4th 958 (1984).